**STATE of Maine**

v.

**James CYR.**

Supreme Judicial Court of Maine.

Argued March 19, 1991.
Decided April 4, 1991.

Janet Mills, Dist. Atty., Patricia Mador (orally), Asst. Dist. Atty., Auburn, for plaintiff.

Peter B. Bickerman (orally), Lipman & Katz, Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

The State appeals from a judgment of the Superior Court (Androscoggin County, *Alexander, J.*) dismissing an indictment charging James Cyr with arson (17–A M.R. S.A. § 802(1)(B) (1983 & Supp.1990)) because of prejudicial preindictment delay. On appeal, the State contends that the court's finding that the preindictment delay caused actual and unjustifiable prejudice is clearly erroneous. The State also contends that the court erroneously shifted the burden of proof to the State on the issue of unjustifiable prejudice. Finding no error, we affirm.

In the fall of 1983, James Cyr acquired a building in Lewiston. With bank financing and financial assistance from associates and investors, Cyr converted the building into a country-western nightclub known as JR's. The nightclub opened in mid-December 1983.

On January 9, 1984, the nightclub was severely damaged by fire. Cyr was on the premises at the time the fire broke out and the evidence clearly indicates that the fire was of incendiary origin. Cyr, who was alone at the time, maintains that the fire was started by a masked man, armed with a knife, who accosted Cyr at the back door of the club. Cyr testified that the masked man forced his way into the building, collected all of the money he could find, then

tied Cyr to a chair using telephone wire, and, after beating him about the head, left him in the bathroom. Cyr further testified that he began to smell smoke and managed to escape from the bathroom and make his way to the Big Apple convenience store across the street for help. At trial, the Big Apple clerks testified that Cyr appeared to have been beaten about the eyes and mouth and his hands were tied behind his back with telephone wire. By the time firefighters arrived, the flames and smoke were visible and the building was severely damaged. A police officer took a number of pictures of Cyr's face showing cuts and bruises. The chair, telephone wire and photographs were taken into police custody and placed in an evidence locker at the police station. They could not be found at the time of trial.

In the days following the fire, the Lewiston police and fire departments and Cyr's insurance carrier conducted extensive investigations to determine the origin and cause of the fire. The investigations were completed sometime during April 1984. Although the reports caused insurance investigators to suspect Cyr's story, the insurance carrier nonetheless paid the claim sometime during the summer of 1984.

On May 23, 1989, more than five years after the fire investigation was completed, Cyr and an associate were indicted by an Androscoggin County grand jury on charges of arson.[1] 17–A M.R.S.A. § 802(1)(B). Between April 1984 and May 23, 1989, there were no new developments in the case—no new evidence was found, no new studies were conducted and no new witnesses or statements regarding the fire were made available to authorities.

Prior to trial, Cyr moved to dismiss the indictment on the ground that the five-year preindictment delay and the State's loss of potentially exculpatory evidence had prejudiced his case. The court reserved judgment on the motion until after trial.[2] During the trial, the State entered evidence to establish that Cyr was heavily in debt, and that he set fire to his business intentionally in order to collect insurance proceeds, then inflicted his own injuries to support his story that a robber set the fire. The jury found Cyr guilty of arson.

Cyr filed post-trial motions for judgment of acquittal and for a new trial seeking to overturn the jury's verdict on three grounds: (1) insufficiency of evidence to support the verdict; (2) prejudice from the State's failure to preserve exculpatory evidence; and (3) prejudicial preindictment delay. The court found that there was sufficient evidence produced at trial to support the jury's verdict.[3] The court further found that Cyr had failed to meet his burden of proof on the issue of prejudice caused by the State's failure to preserve exculpatory evidence.[4] Finding that Cyr had established actual and unjustifiable prejudice as a result of the delay in indicting him, the court granted Cyr's pretrial motion to dismiss the indictment on the ground of prejudicial preindictment delay.[5] On appeal, the State contends that the court's finding that Cyr's due process

1. The charge against Cyr's associate was dismissed before trial.

2. The presiding justice felt that the record was insufficient to make a decision on Cyr's motion prior to trial. Neither party challenges the court's decision to postpone its ruling on the motion.

3. Cyr does not contest this ruling on appeal.

4. The State's failure to preserve evidence does not violate a criminal defendant's right to a fair trial unless (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, (2) the defendant would be unable to obtain evidence of comparable value by other reasonably available means, and

(3) the State acted in bad faith in failing to preserve potentially useful evidence. *State v. Lewis*, 584 A.2d 622, 625 (Me.1990). The court found that the photographs possessed exculpatory value that was apparent before they were lost but that the chair and telephone wire did not. The court further found that Cyr was unable to obtain evidence comparable to the photographs by other reasonably available means. The court found, however, that Cyr failed to demonstrate bad faith on the part of the State. There is evidence in the record to support these findings.

5. Because the court granted Cyr's pretrial motion to dismiss the indictment, it dismissed the post-trial motions for judgment of acquittal and for a new trial as moot.

rights were violated by prejudicial preindictment delay is clearly erroneous. We disagree.

The primary guarantee against a citizen being subjected to overly stale criminal charges is provided by statutes of limitations. The due process clauses of the Maine and United States constitutions have a limited role to play in protecting defendants against oppressive delay. *State v. Hutchins*, 433 A.2d 419, 422 (Me.1981). In deciding due process challenges based on preindictment delay, we apply the standard articulated by the United States Supreme Court in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). *State v. Berkley*, 567 A.2d 915, 917 (Me.1989). Under this standard, the defendant must first demonstrate "actual and unjustifiable prejudice" resulting from a delay in seeking an indictment. Only then does the court inquire as to the reasons for the delay that may be offered by the State and determine, on balance, whether the prejudice caused by the delay remains unjustified. *Id.* There may be many and varied legitimate reasons for delay. The discretion of a prosecutor as to the time to seek an indictment is broad. *Id.* Generally, as long as the prosecutor acts within the time period of the statute of limitations, there is no constitutional obligation to file charges immediately after evidence of guilt has been gathered. *Hutchins*, 433 A.2d at 422. The prosecutor may, and indeed should, delay seeking an indictment until there is complete satisfaction that the case should be prosecuted. *Id.* No matter what the explanation for the delay, the burden of persuasion remains with the defendant. *Berkley*, 567 A.2d at 917. On appeal we review the trial court's findings for clear error. *State v. Lewis*, 584 A.2d 622, 625 (Me.1990).

The arson indictment in this case was brought within the six-year statutory time period for arson. During the five years that passed between the date of the fire and the date the State brought the indictment, however, the memories of witnesses faded and the State misplaced several pieces of evidence, including photographs that the court found to possess exculpatory value. The court found that had it not been for the delay the photographs would not have been lost[6] and Cyr might have been able to secure the testimony of medical witnesses who could have corroborated his contention that the wounds were not self-inflicted. The court found that Cyr established actual and unjustifiable prejudice and examined the reasons, or lack thereof, for the delay. The State offered no real reason for the delay in seeking the indictment. The court concluded that on balance the prejudice was actual, caused by the delay and unjustified, and dismissed the indictment on due process grounds.

The State contends that Cyr made no real effort to obtain testimony of medical witnesses and notes that, even if he had, such testimony would have been cumulative given that a hospital report detailing the extent of Cyr's injuries was in fact presented to the jury. With respect to the photographs, the State contends that the hospital report and testimony from a number of witnesses who described Cyr's injuries rendered the photographs merely cumulative and that their loss could not have been found to be prejudicial.

Although it is difficult to determine from a cold record whether the result in this case would have been different if the indictment had been brought earlier, it is clear from the court's opinion that the presiding justice had an accurate understanding of the legal standard involved in ruling on Cyr's due process challenge and applied the standard correctly. Given that the trial justice heard all the evidence in this case and was in a position to determine its importance, and in view of the unique impact that photographs can have upon a trial, we cannot say that the court's findings are clearly erroneous.

We have reviewed the State's additional contention that the court erroneously shift-

---

**6.** The only explanation for the loss of the evidence advanced by the State was that the photographs were misplaced when the Lewiston Police Department moved from its prior location in the Lewiston City Hall to its new headquarters in the fall of 1987.

ed the burden of proof from the defendant to the State on the issue of unjustifiable prejudice and find no support for this contention in the record. The court's order clearly indicates that the burden of proof remained, as it should have, with the defendant.

The entry is:

Judgment affirmed.

All concurring.