2003 ME 139

**Carl GRUBB**

v.

**S.D. WARREN COMPANY et al.**

**Docket No. WCB–02–380.**

Supreme Judicial Court of Maine.

Argued: Jan. 16, 2003.

Decided: Dec. 4, 2003.

Charles W. March, Esq. (orally), Reben, Benjamin and March, Portland, for employee.

---

Thomas E. Getchell, Esq. (orally), Troubh, Heisler & Piampiano, P.A., Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, and LEVY, JJ.

Concurring/Dissenting: CLIFFORD and CALKINS, JJ.

RUDMAN, J.

[¶ 1] S.D. Warren Company appeals from a decision of a hearing officer of the Workers' Compensation Board (*Jerome, HO*) granting Carl Grubb's petition for restoration and awarding him partial incapacity benefits pursuant to 39–A M.R.S.A. § 224 (Supp.2002). S.D. Warren contends that it was error to recalculate the employee's benefits in the absence of a finding that his circumstances had changed since a previous decree awarding benefits. We agree and vacate.

## I. BACKGROUND

[¶ 2] Carl Grubb suffered work-related injuries in 1985 and 1986 while employed by S.D. Warren, and continues to work for S.D. Warren with work-restrictions. Grubb was awarded partial incapacity benefits pursuant to a decree in 2000. The hearing officer concluded in the 2000 decree that, because Grubb is entitled to an inflation adjustment pursuant to the law at the time of his 1985 and 1986 dates of injury, *see* 39 M.R.S.A. §§ 55, 55–A (Pamph.1986), *repealed and replaced by*

P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 213 (2001 & Supp.2002)), Grubb's weekly benefit rate would be calculated by first adjusting his pre-injury wage for inflation and comparing the adjusted wage with his current inflated earnings.

[¶ 3] S.D. Warren filed a timely petition for appellate review challenging the 2000 decree. While S.D. Warren's petition was pending, we decided *Bernard v. Mead Publ'g Paper Div.*, 2001 ME 15, ¶ 17, 765 A.2d 576, 581, holding that, in calculating partial incapacity benefits in ordinary cases,[1] the hearing officer must first compare unadjusted wages and apply the inflation factor to the difference, if any. S.D. Warren's petition for appellate review was granted and the hearing officer's decision was summarily vacated and remanded to the Board with instructions to apply the rule as articulated in *Bernard.* On remand, the hearing officer vacated the earlier decision and denied ongoing benefits, after concluding that, because Grubb's current earnings exceeded his unadjusted pre-injury earnings, he would not be entitled to partial incapacity benefits. Grubb did not appeal.

[¶ 4] After the hearing officer's decision on remand, the Legislature enacted section 224, altering the rule for calculating partial benefits. Section 224 provides:

The annual adjustment made pursuant to former Title 39, sections 55 and 55–A must be made as follows. The preinjury average weekly wage must first be adjusted to reflect the annual inflation or deflation factors as computed by the Maine Unemployment Insurance Commission for each year from the date of injury to the date of calculation.

---

1. Our decision in *Bernard v. Mead Publ'g Paper Div.*, 2001 ME 15, ¶ 17, 765 A.2d 576, 581, did not preclude a different calculation method in cases involving varying rates of partial incapacity benefits when an employee's post-injury earnings vary from week to week. *See also Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1116–17 (Me.1985).

Once this weekly benefit amount is calculated, the amount must continue to be adjusted annually so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Maine Unemployment Insurance Commission as it did at the time of the injury. This section clarifies the method of calculating the annual adjustment to benefits under former Title 39, sections 55 and 55–A and applies to all benefit calculations pursuant to those sections.

P.L.2001, ch. 390, § 1 (codified at 39–A M.R.S.A. § 224) (effective September 21, 2001).[2]

[¶ 5] Shortly after the effective date of section 224, Grubb filed another petition seeking a new calculation of his weekly benefits. Grubb sought a recalculation based on the change in section 224, but he did not prove a factual change in circumstances, nor did he seek to have the hearing officer address his benefit through an annual readjustment. *See* 39–A M.R.S.A. §§ 213, 224 (2001 & Supp.2002). In the decision that is the subject of this appeal, the hearing officer granted Grubb's petition and established his benefits at a 20% partial incapacity level beginning on the effective date of section 224. The hearing officer rejected S.D. Warren's contention that Grubb was not entitled to a new determination of benefits because he had not established a change of circumstances since the previous decree:

> 3. The employer maintains that Mr. Grubb has to demonstrate a change in circumstance since the date that evidence closed in the last decree in order to justify revisiting the factual issues already discussed....
>
> 4. However, the law has changed since the date the Board last considered this matter. The Legislature has established a new yardstick by which benefits must be calculated and presumably by which the Board must measure the existence or extent of partial incapacity.
>
> With respect to the defense of *res judicata*, I find that § 224 specifically states it applies despite any adverse order or decree. Given this language, I find that the legislature has rejected the principle of *res judicata* in this circumstance and that it intended to provide a mechanism to allow re-examination of decrees based upon the new version of the law.

[¶ 6] We granted S.D. Warren's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

■ [¶ 7] Because the hearing officer based his decision upon the conclusion that principles of *res judicata* do not apply in this case, we limit our analysis to that conclusion.[3] It is well-established that in order to prevail on a petition to increase or decrease compensation in a workers' compensation case when a benefit level has been established by a previous decision, the petitioning party must first meet its burden to show a "change of circumstances" since the prior determination, which may be met by either providing "comparative medical evidence," or by

---

2. The enacting statute of section 224 provides that, "[t] his Act applies retroactively to benefit calculations made under the Maine Revised Statutes, former Title 39, sections 55 and 55–A at any time after January 1, 1972, and applies notwithstanding any adverse order or decree." P.L.2001, ch. 390, § 2.

3. Whether an employee in Grubb's circumstances may obtain a recalculation of his entitlement to and amount of a benefit by invoking the annual adjustment process set out at 39–A M.R.S.A. § 213 is not before us in this appeal.

showing changed economic circumstances. *See, e.g., McIntyre v. Great N. Paper, Inc.*, 2000 ME 6, ¶¶ 5–6, 743 A.2d 744, 746–47; *Folsom v. New England Tel. & Tel. Co.*, 606 A.2d 1035, 1038 (Me.1992).[4]

[¶ 8] Indeed, the "changed circumstances" doctrine is one of the oldest principles in our workers' compensation jurisprudence. As we have stated:

> Since the inception of the Workers' Compensation law in Maine, see P.L. 1915, ch. 295, §§ 1–51 (codified at R.S. ch. 50, §§ 1–48 (1916)), this Court has consistently held that a petition for further compensation must address a change in the petitioner's circumstances, and that such a petition assumes that any prior decree was correct as to issues specifically relied upon.

*Dillingham v. Andover Wood Prods., Inc.*, 483 A.2d 1232, 1234 (Me.1984).[5]

[¶ 9] We have also held that valid and final decisions of the Workers' Compensation Board are subject to the general rules of res judicata and issue preclusion, *see Ervey v. Northeastern Log Homes*, 638 A.2d 709, 710 (Me.1994) (res judicata); *Crawford v. Allied Container Corp.*, 561 A.2d 1027, 1028 (Me.1989) (issue preclusion), not merely with respect to the decision's ultimate result, but with respect to all factual findings and legal conclusions that form the basis of that decision, *see McIntyre*, 2000 ME 6 at ¶¶ 7–8, 743 A.2d at 747. Res judicata and issue preclusion in the workers' compensation setting is intended to promote "judicial economy and efficiency, the stability of final judgments, and fairness to litigants." *Crawford*, 561 A.2d at 1028.

[¶ 10] While we have held that statutory amendments may be applied retroactively to alter an employee's level of benefits for injuries predating those amendments, *see Tompkins v. Wade & Searway Constr. Corp.*, 612 A.2d 874, 877–78 (Me.1992) (relying, in part, on *General Motors Corp. v. Romein*, 503 U.S. 181, 190–91, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)), we have never held that an amendment may be applied to alter an employee's level of benefits in cases when benefits have been previously established by decree or a binding agreement in the absence of changed circumstances.[6]

---

**4.** The rule applies equally to mediation or other approved agreements, and to other types of binding compensation schemes that we have stated have the same effect as a decision. *See Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 590 (Me.1996) (mediation agreements); *Wentworth v. Manpower Temp. Servs.*, 589 A.2d 934, 937 (Me.1991) (compensation schemes pursuant to the former early pay system); *Hafford v. Kelly*, 421 A.2d 51, 53 (Me.1980) (approved agreement).

**5.** In 1981 the Legislature amended the former Workers' Compensation Act, 39 M.R.S.A. § 100 to expressly require a showing of "comparative medical evidence" on a party's second petition for review. P.L.1981, ch. 514 (codified at 39 M.R.S.A. § 100(2) (Supp. 1982)), *repealed by* P.L.1991, ch. 885, § A–7. We have held that although the 1981 amendment modified the changed circumstances doctrine, it did not displace or eliminate the previous judge-made rule. *See Folsom v. New England Tel. & Tel. Co.*, 606 A.2d 1035, 1037 (Me.1992). The comparative medical evidence requirement was removed from the statute in 1987. P.L.1987, ch. 559, Pt. B, § 41 (codified at 39 M.R.S.A. § 100(2) (Pamph.1988)), *repealed by* P.L.1991, ch. 885, § A–7.

**6.** We have not required a showing of a change in circumstances prior to the application of a new statute, however, in situations when a legislative amendment makes a procedural change to the law. *See, e.g., Mathieu v. Bath Iron Works*, 667 A.2d 862, 867–68 (Me. 1995) (removal of intermediate appellate review is procedural alteration and may be applied retroactively); *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me.1980) (statute of limitations is procedural and may apply retroactively in cases when the statute has not already expired).

[¶ 11] The Legislature has the authority to change prospectively the manner in which benefits are calculated. Clearly, section 224 changes the manner in which an employee's level of benefits is determined. The statute does not, nor could it, change the result of a previous decision. Section 224 determined how benefits are calculated, not when benefits are calculated. The Legislature may not disturb a decision rendered in a previous action, as to the parties to that action; to do so would violate the doctrine of separation of powers.[7] *State v. L.V.I. Group,* 1997 ME 25, ¶ 11 n. 4, 690 A.2d 960, 964.

[¶ 12] The plain language of section 224 provides that it "applies to all benefit calculations" pursuant to former 39 M.R.S.A. §§ 55, 55-A. 39-A M.R.S.A. § 224 (Supp.2002). In cases when an employee's level of benefits has been previously established, a new "benefit calculation" cannot be made until a party prevails on a petition to increase or reduce benefits, after first establishing a sufficient change of circumstances to overcome the res judicata effect of the prior award. Because the hearing officer expressly found that there had been no change in Grubb's circumstances since the previous 2000 decree, we conclude that it was error to recalculate Grubb's benefits pursuant to section 224. In *Morrissette v. Kimberly–Clark Corp.,* 837 A.2d 123 (Me.2003), decided today, the employer did establish a change of circumstances and therefore was entitled to a new benefit calculation.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

CLIFFORD, J., with whom CALKINS, J., joins concurring in part and dissenting in part.

[¶ 13] Because in my view, the Court does not sufficiently address the application of section 224, I write separately.

[¶ 14] Title 39-A M.R.S.A. § 224 (Supp. 2002) addresses the manner in which partial incapacity benefits and the inflation adjustment provided for in 39 M.R.S.A. §§ 55 and 55-A (Pamph.1986) *repealed and replaced by* P.L.1991, ch. 885, §§ A-7, A-8 (codified at 39-A M.R.S.A. § 213 (2001 & Supp.2002)) are calculated. Assuming the Court is correct in its conclusion that the manner of calculating Grubb's partial incapacity benefits cannot be changed in the absence of a circumstance justifying the hearing officer addressing that calculation, in my view, the provisions of section 224 can and should be applied on the anniversary date when a calculation is called for to determine if there is an entitlement to benefits, and to adjust any benefit for inflation, without *any* res judicata or separation of powers implications.

[¶ 15] Former 39 M.R.S.A. § 55-A provides, in pertinent part:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury . . . . This weekly compensation shall be *adjusted annually* so that it continues to bear the same percentage relationship to

---

7. "No person or persons, belonging to one of [the legislature, executive, or judicial] departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." ME. CONST. art. III, § 2.

the state average weekly wage, as computed by the Maine Unemployment Insurance Commission, as it did at the time of the injury, but in no case may the annual adjustment exceed the lesser of 5% or the actual percentage increase in the state average weekly wage for the previous year. The annual adjustment required by this section shall be made on the anniversary date of the injury

. . . .

39 M.R.S.A. § 55–A (Pamph.1986) (emphasis added), *repealed and replaced by* P.L. 1987, ch. 559, Pt. B, §§ 29, 30 (codified at 39 M.R.S.A. § 55–B (1989)), *repealed and replaced* by P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 213 (2001 & Supp.2002)).

[¶ 16] Our decision in *Bernard v. Mead Publishing Paper Division,* 2001 ME 15, ¶ 16, 765 A.2d 576, 579, construed section 55–A, and concluded that in calculating benefits to which an employee is entitled, the hearing officer must first compare pre-injury wages, unadjusted for inflation, to post-injury wages, and *then* apply the inflation adjustment to the difference between the two. *Id.*

[¶ 17] Section 224 was enacted in reaction to our decision in *Bernard,* and it addresses the way that the partial incapacity benefit and the inflation adjustment are calculated. The statute provides that to determine the benefit, the inflation adjustment must be applied to an employee's pre-injury wage *before* the comparison of pre-injury and post-injury wages.

[¶ 18] The Legislature made very clear that section 224 is to be given "the broadest possible application." *Bernier v. Data Gen. Corp.,* 2002 ME 2, ¶ 17, 787 A.2d 144, 150. Its enacting provision states that "[t]his Act applies retroactively to *benefit calculations* made under the Maine Revised Statutes, former title 39, sections 55 and 55–A at any time after January 1, 1972, and applies *notwithstanding any adverse order or decree.*" P.L.2001, ch. 390, § 2 (emphasis added).

[¶ 19] The Workers' Compensation Act is uniquely statutory. *American Mut. Ins. Cos. v. Murray,* 420 A.2d 251, 252 (Me. 1980). Retroactive application of workers' compensation provisions does not violate due process if the statutory provisions are enacted to further a legitimate legislative purpose. *Tompkins v. Wade & Searway Const. Corp.,* 612 A.2d 874, 877–78 (Me. 1992).

[¶ 20] Section 224 reflects a legislative policy that addresses the manner in which partial incapacity benefits, including the inflation adjustment provided for in former section 55–A, are calculated. The Court acknowledges that the Legislature does have the authority to change prospectively "the manner in which benefits are calculated." Section 55–A requires that the "weekly compensation be adjusted annually." *See also Marchand v. E. Welding Co.,* 641 A.2d 190, 192 (Me.1994) (discussing application of annual inflation adjustment); *Bernard v. Cives Corp.,* 395 A.2d 1141, 1149–1151 (Me.1978) (same). The Legislature clearly intended section 224 to apply retroactively. I agree with the Court that, despite the legislative directive that the statute should be applied retroactively, there was no circumstance justifying the immediate application of section 224 in this case. In my view, however, the new provisions of section 224 should be applied to Grubb's benefit, previously calculated to be zero, upon the occasion of the date called for by the statute for an annual adjustment of Grubb's weekly compensation. The requirement in former section 55–A that a new calculation be made on an annual basis clearly allows, indeed requires, section 224 and the new method of calculation to be applied from the date of the annual adjustment forward, and I

would vacate the decision of the hearing officer and remand for that to occur.