STATE OF MAINE                                    UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                   CRIMINAL ACTION
                                                  DOCKET NO. CR-09-5466

STATE OF MAINE,

        Plaintiff

v.                                                ORDER & DECISION

OWEN THURSTON,

        Defendant.

Before the court is Defendant's, Owen Thurston ("Thurston"), motion to dismiss,

alleging that count III should be dismissed because of double jeopardy or collateral estoppel, and

that all counts should be dismissed because of due process violations due to the delay in

prosecuting the case. For the reasons discussed below, the Defendant's motion is granted in part

and denied in part.

## BACKGROUND

On November 24, 2006 the Defendant was issued an 11-count summons relating to the

allegation that he and Tanner Hawkes ("Hawkes") failed to comply with the regulations for

hunting deer by shooting and killing two deer with a crossbow at night with a night vision scope.

The related 7-count criminal complaint was not filed against the Defendant until January 22,

2008. Arraignment occurred on February 22, 2008, at which Thurston plead not guilty.

Thurston was also charged with a civil violation, Failure to Attach a Tag to Deer, on

November 24, 2006. A bench trial was held relating to this violation on August 12, 2008.

Thurston was acquitted after the court (*Moskowitz, J.*) found that the State failed to prove by a

preponderance of the evidence that Thurston shot and possessed the deer in question.

On December 8, 2008, the State dismissed all charges against the Defendant for a procedural deficiency relating to the name on the original complaint. Hawkes's case was not dismissed, and he pleaded guilty to the charges stemming from the November 24, 2006 hunting incident. At a follow up interview in January 2009 Hawkes allegedly changed his story of the incident to implicate the Defendant.[1]

The Grand Jury returned an indictment for the instant case on February 2, 2009. Thurston is charged with the following crimes:

- Two counts of Hunting Wild Birds or Animals at Night with Possession of Night Vision (12 M.R.S.A. § 12306(2)(B));

- One count of Exceeding the Bag Limit on Deer (12 M.R.S.A. § 11501(1));

- One count of Hunting Deer After Having Killed One (12 M.R.S.A. § 11501(2)); and

- One count of Hunting Without a Valid License (12 M.R.S.A. § 11109(1)).

The Defendant was served with a complaint in September 2009 and filed this motion to dismiss on November 6, 2009. As discussed below, this motion is granted in part and dismissed in part.

## DISCUSSION

I.    Count Three: Exceeding the Bag Limit

Thurston contends that since he was acquitted of the civil violation charge of Failure to Attach a Deer Tag, the State should be barred from trying him on the related criminal charge of Exceeding the Deer Bag Limit. He brings two theories in support of his claim: double jeopardy and collateral estoppel. The court addresses each in turn.

---

[1] Specifically, Thurston claims that he is prejudiced by the delay because "[a]fter dismissing [his] case due to [the State's] mistake, the State re-interviewed Tanner Hawkes on January 30, 2009 . . . . As Mr. Hawkes no longer faced any liability from these charges, he essentially gained immunity. Mr. Hawkes has now changed his story to implicate the Defendant." (Def.'s M. Diss. at 7.)

2

A. Double Jeopardy

In *State v. Hughes* the Law Court explained double jeopardy, stating:

> The double jeopardy provisions of both the United States and Maine Constitutions are co-extensive. Both Constitutions protect a criminal defendant from multiple punishments for the same offense. *State v. Smith*, 2002 ME 177, ¶ 2, 816 A.2d 57, 58. However, both proceedings need to have involved the potential for a criminal punishment . . . . 'Whether an offense defined by statute is civil or criminal is primarily a matter of statutory construction . . . . The statutory scheme must be analyzed to determine whether it is so punitive either in purpose or effect as to negate that intention with regard to the constitutional protection at issue.'

*State v. Hughes*, 2004 ME 141, ¶ 3, 863 A.2d 266, 268 (citing *State v. Anton*, 463 A.2d 703, 705-06 (Me. 1983)). The Court further noted that a "criminal sanction serves to punish while a civil sanction serves only to coerce, regulate, or compensate." *Id.* (citing *Cooke v. Naylor*, 573 A.2d 376, 377 (Me. 1990).

Here, both proceedings did *not* have the potential for criminal punishment. Had Thurston been convicted of the civil violation, he would have been subject to the penalty of "a fine of not less than $100 nor more than $500." *See* 12 M.R.S.A. § 11502(3)(A); *see also Anton*, 463 A.2d at 707 (noting that fines are civil in nature when they are reasonable and have a remedial purpose). As such, Thurston's claim that the Exceeding the Bag Limit count is barred because of double jeopardy fails as a matter of law.

B. Collateral Estoppel

In the alternative, Thurston contends that the doctrine of collateral estoppel prohibits the State from charging him with Exceeding the Bag Limit. The court looks again to the *Hughes* decision for a discussion on collateral estoppel.

> The doctrine of collateral estoppel is embodied in the Constitution's Fifth Amendment guarantee against double jeopardy. *State v. Spearin*, 463 A.2d 727, 730 (Me. 1983) (citing *Ashe v. Swenson*, 397 U.S. 436, 445, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970)). Collateral estoppel applies when (1) the identical factual issue was decided by a prior final judgment, and (2) the party to be estopped had

3

> an opportunity and an incentive to litigate the issue at the prior proceeding . . . . A party has a fair opportunity to litigate an issue if that party either controls the litigation, substantially participates in that litigation, or could have participated in the litigation had they chosen to do so . . . .

*Hughes*, 2004 ME 141, ¶ 5, 863 A.2d at 268-69. "The party who asserts collateral estoppel bears the burden of establishing that the party to be estopped had a fair opportunity to litigate the issue in the prior proceeding." *Id.* at ¶ 6, 863 A.2d at 269 (citing *Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333-34 (Me. 1995)).

The civil violation charge of Exceeding the Bag Limit states that "[a] person may not possess more than one deer during an open season . . . ." 12 M.R.S.A. § 11501(1). Thurston was acquitted of this charge in District Court. Thurston's criminal charge of Deer Tagging states that "Prior to presenting a deer for registration, a person may not possess or leave in the field or forest a deer killed by that person unless the deer has securely attached to it a plainly visible tag that conforms to the requirements established under this section." 12 M.R.S.A. § 11502(2).

The State contends that the elements contained in each of the statutes are factually distinct such that collateral estoppel does not apply. The court disagrees. Possession of a deer is an essential factual element underlying both charges. Further, as the District Court's decision that Thurston was not guilty of the Civil Violation was a final judgment, Thurston has met the burden of establishing the first prong of the collateral estoppel test.

The court also concludes that the State had a fair opportunity and incentive to litigate the civil violation. The State had control and was a party in the prior proceeding. Further, to obtain a conviction the State had to prove that Thurston possessed an untagged deer. The State was unable to do so, even in light of the preponderance of the evidence standard of proof. As such, the second prong of collateral estoppel is established, and Thurston's motion to dismiss count three, Exceeding the Bag Limit, is GRANTED.

4

II.     Due Process Violation

Thurston argues that his ability to mount an effective defense was substantially impaired by the delay caused by the State's dismissal of the initial defective indictment and the re-interview of Hawkes. Thurston contends that Hawkes' changed story regarding the hunting incident was caused by this delay, giving the State a tactical advantage and resulting in substantial prejudice to Thurston.

The Law Court has acknowledged that the due process clauses of our country's and state's constitutions have a limited role in protecting a defendant against "oppressive delay." *State v. Hutchins*, 433 A.2d 419, 422 (Me. 1981). In this regard, it has adopted the federal standard to determine if pre-indictment delay results in a successful due process challenge to an indictment. *See State v. Cyr*, 588 A.2d 753, 756 (Me. 1991) (citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Berkley*, 567 A.2d 915, 917 (Me. 1989)).

> Under this standard, the defendant must first demonstrate 'actual and unjustifiable' prejudice resulting from a delay in seeking an indictment. Only then does the court inquire as to the reasons for the delay that may be offered by the State and determine, on balance, whether the prejudice caused by the delay remains unjustified. There may be many and varied legitimate reasons for delay. The discretion of a prosecutor as to the time to seek an indictment is broad. Generally, as long as the prosecutor acts within the time period of the statute of limitations, there is no constitutional obligation to file charges immediately after evidence of guilt has been gathered. The prosecutor may, and indeed should, delay seeking an indictment until there is complete satisfaction that the case should be prosecuted. No matter what the explanation for the delay, the burden of persuasion remains with the defendant.

*Id.* (internal citations omitted).[2]

---

[2] The court notes,

> regarding the State's burden of explanation, [the Law Court] explained that 'prosecutors are not constitutionally obligated to file charges the moment they have assembled evidence of guilt,' and that a prosecutor 'abides by [standards of fair play and decency] if

In accordance with this standard, the court does not look to the reason for the pre-indictment delay, but whether the delay caused actual prejudice to Thurston's defense. *See State v. Hutchins*, 433 A.2d 419, 423 (Me. 1981) (finding that whether the State's "action was an impermissible departure from those standards of 'fair play and decency' that constitute the cornerstone of our judicial system we need not decide, for defendant has failed to show that the State's delay caused any prejudice to his defense"). The court concludes that Thurston has not met his burden of demonstrating unfair prejudice as a result of the delay. Thurston's contention that Hawkes' re-interview prejudiced him fails since even if Hawkes' testimony did change, Thurston has not shown that the pre-indictment delay *caused* the change. Nor has Thurston demonstrated that actual prejudice resulted from the delay. The court also notes that there is no allegation that the State intentionally delayed the proceedings "to secure a 'tactical advantage' over the defendant." *State v. Hutchins,* 433 A.2d 419, 423 n.3 (Me. 1981) (citing *United States v. Marion*, 404 U.S. 307, 325, 30 L. Ed. 2d 468, 481, 92 S. Ct 455, 466 (1971)). Since Thurston has failed to carry his burden of establishing a causal connection between the delay and any actual prejudice to his defense, his motion is DENIED.

## CONCLUSION

The motion to dismiss is therefore GRANTED as to count three, Exceeding Bag Limit, and DENIED on the claim of violation of due process.

DATED: 11/30/09

Joyce A. Wheeler, Justice

---

he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt.'
*State v. Berkley*, 567 A.2d 915, 917 (Me. 1989) (citing *Hutchins*, 433 A.2d at 423).

6

  vs

OWEN G THURSTON

31 BRANDYBROOK LANE

NEW GLOUCESTER ME 04260

Docket No  CUMCD-CR-2009-05466

**DOCKET RECORD**

DOB: 12/27/1964

Attorney: JOHN DEGRINNEY
        DEGRINNEY LAW OFFICES
        1266 CONGRESS STREET
        PORTLAND ME 04102
        RETAINED 10/29/2009

State's Attorney: STEPHANIE ANDERSON

Filing Document: INDICTMENT

Filing Date: 07/10/2009

Major Case Type: MISDEMEANOR (CLASS D,E)

## Charge(s)

**1    NIGHT HUNTING WITH NIGHT VISION EQUIPMENT  11/24/2006 NORTH YARMOUTH**
**Seq 10229 12    11206(2)(B)        Class D**
    **JUDD            / WAR**

**2    NIGHT HUNTING WITH NIGHT VISION EQUIPMENT  11/24/2006 NORTH YARMOUTH**
**Seq 10229 12    11206(2)(B)        Class D**
    **JUDD            / WAR**

**3    EXCEEDING BAG LIMIT ON DEER         11/24/2006 NORTH YARMOUTH**
**Seq 10300 12    11501(1)         Class D**
    **JUDD            / WAR**

**4    HUNTING DEER AFTER HAVING KILLED ONE    11/24/2006 NORTH YARMOUTH**
**Seq 10301 12    11501(2)         Class D**
    **JUDD            / WAR**

**5    HUNT WITHOUT VALID LICENSE          11/24/2006 NORTH YARMOUTH**
**Seq 10962 12    11109(1)         Class E**
    **JUDD            / WAR**

## Docket Events:

07/14/2009 FILING DOCUMENT -   INDICTMENT FILED ON 07/10/2009

07/14/2009 Charge(s): 1,2,3,4,5
      HEARING -   ARRAIGNMENT SCHEDULED FOR 07/28/2009 @ 8:30 in Room No.  1

      NOTICE TO PARTIES/COUNSEL
07/14/2009 Charge(s): 1,2,3,4,5
      HEARING -   ARRAIGNMENT NOTICE SENT ON 07/14/2009

07/21/2009 Charge(s): 1,2,3,4,5
      HEARING -   ARRAIGNMENT RET UNDELIVERABLE ON 07/21/2009
      JAMES  TURCOTTE , ASSISTANT CLERK
07/29/2009 Charge(s): 1,2,3,4,5
      HEARING -   ARRAIGNMENT HELD ON 07/28/2009 @ 8:30 in Room No.  1
      JOYCE A WHEELER , JUSTICE

DEFENDANT INFORMED OF CHARGES.   21 DAYS TO FILE MOTIONS

TAPE 3359

07/29/2009 Charge(s): 1,2,3,4,5
          PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 07/28/2009 @ 8:30 in Room No.  1

07/29/2009 Charge(s): 1,2,3,4,5
          HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 10/29/2009 @ 8:45 in Room No.  7

07/29/2009 Charge(s): 1,2,3,4,5
          TRIAL -  JURY TRIAL SCHEDULED FOR 12/07/2009 @ 8:30 in Room No.  11

          NOTICE TO PARTIES/COUNSEL
10/02/2009 Charge(s): 1,2,3,4,5
          HEARING -  DISPOSITIONAL CONFERENCE NOTICE SENT ON 10/02/2009

10/29/2009 Party(s):  OWEN G THURSTON
          ATTORNEY -  RETAINED ENTERED ON 10/29/2009

          Attorney:  JOHN DEGRINNEY
10/29/2009 Charge(s): 1,2,3,4,5
          HEARING -  DISPOSITIONAL CONFERENCE HELD ON 10/29/2009
          PAUL E EGGERT , JUDGE
          Attorney:  JOHN DEGRINNEY
          DA:  MICHAEL MADIGAN
          HELD.   RESET FOR FURTHER DISPOSITIONAL CONFERENCE. 11-5-09
10/29/2009 Charge(s): 1,2,3,4,5
          HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 11/05/2009 @ 9:30

11/05/2009 Charge(s): 1,2,3,4,5
          HEARING -  DISPOSITIONAL CONFERENCE HELD ON 11/05/2009
          JOYCE A WHEELER , JUSTICE
          DA:  MICHAEL MADIGAN
11/10/2009 HEARING -  MOTION TO DISMISS SCHEDULED FOR 11/17/2009 @ 1:00 in Room No.  8

          NOTICE  TO PARTIES/COUNSEL
11/10/2009 HEARING -  MOTION TO DISMISS NOTICE SENT ON 11/05/2009

11/10/2009 MOTION -  MOTION TO DISMISS FILED BY DEFENDANT ON 11/06/2009

12/02/2009 MOTION -  MOTION TO DISMISS GRANTED ON 11/30/2009
          JOYCE A WHEELER , JUSTICE
          COPY TO PARTIES/COUNSEL
12/02/2009 HEARING -  MOTION TO DISMISS HELD ON 11/17/2009

12/03/2009 ORDER -  COURT ORDER FILED ON 12/01/2009
          JOYCE A WHEELER , JUSTICE
          THE MOTION TO DISMISS IS THEREFORE GRANTED AS TO COUNT THREE, EXCEEDING THE BAG LIMIT, AND
          DENIED ON THE CLAIM OF VIOLATION OF DUE PROCESS.

A TRUE COPY
ATTEST: _____
                    Clerk